## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, John Dalen Bunch, Special Agent with the United States Forest Service, Law Enforcement and Investigations ("FS-LEI"), being duly sworn, deposes and states under penalty of perjury that the following is true to the best of my information, knowledge, and belief.

## BACKGROUND

1. I am a Special Agent with FS-LEI. I have been so employed since approximately August 2012. As part of my duties as an FS-LEI Special Agent, I investigate criminal violations of federal laws, including Title 18, United States Code, Section 922, as well as violations of Title 16 and Title 21 of the United States Code. I am duly authorized by Title 16, United States Code, Section 559c, to carry firearms and conduct, within the exterior boundaries of the National Forest System, investigations of violations of and enforce section 841 of Title 21 and other criminal violations relating to controlled substances that are manufactured, distributed, or dispensed on National Forest System lands and to conduct such investigations and enforcement of such laws outside the exterior boundaries of the National Forest System for offenses committed within the National Forest System or which affect the administration of the National Forest System (including the pursuit of persons suspected of such offenses who flee the National Forest System to avoid arrest).

2. I have made arrests with a warrant or process for misdemeanor violations, or without a warrant or process for violations of such misdemeanors that any such officer or employee has probable cause to believe are being committed in his presence or view, or for a felony with a warrant or without a warrant if he has probable cause to believe that the person to be arrested has committed or is committing such felony, for offenses committed within the National Forest System or which affect the administration of the National Forest System. I have served warrants and other process issued by a court or officer of competent jurisdiction. I have searched with or without warrant or process any person, place, or conveyance according to Federal law or rule of law. I have seized with or without warrant or process any evidentiary item according to Federal law or rule of law.

3. As part of my FS-LEI training, I attended the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia, and completed the thirteen-week Basic Criminal Investigator Training Program. I have also completed the nineteen-week FS-LEI Land Management Police Training Program. Prior to my time as an FS-LEI Special Agent, I completed the FLETC Federal Air Marshal Training Program, and served as a Federal Air Marshal for three years. I have attended numerous training courses on techniques for investigating federal and state crimes, and I have participated in the execution of multiple federal and state search warrants.

4. I graduated from Texas A&M University, earning a Bachelor of Science in Agricultural Development. I am a combat veteran, having served as an Infantry Officer in the United States Marine Corps; I was honorably discharged as a Captain.

5. Because this affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause to believe that TORY SHANE SMART violated Title 18, United States Code, Section 922(g)(1) (felon in possession of a firearm/ammunition) and Title 21, United State Code, Section 841(a)(1), (b)(1)(C) (possession with intent to distribute a controlled substance) (the "Subject Offenses").

6. The information contained within the affidavit is based on my training and experience, as well as information imparted to me by other law enforcement officers involved in this investigation and my review of records and other materials obtained during the course of this investigation.

7. I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

## PROBABLE CAUSE

8. Starting in late June 2022, the "Rainbow Family of Living Light" began gathering in the Routt National Forest in the District of Colorado (the "Rainbow Gathering"). FS-LEI officers have been involved in patrolling the Routt National Forest during the Rainbow Gathering.

9. On July 2, 2022, FS-LEI was on patrol along on Routt County Road 80 in the Routt National Forest. During this patrol, FS-LEI personnel smelled the aroma of burnt marijuana coming from a vehicle parked along Routt County Road 80 (the "Vehicle"). Because possession of marijuana is unlawful in the Routt National Forest, FS-LEI personnel contacted the occupants of the Vehicle.

10. Upon contact, FS-LEI observed that TORY SHANE SMART was sitting in the front passenger seat of the Vehicle, and there was another occupant in the driver's seat of the Vehicle ("Individual-1"). During the contact with SMART and Individual-1, the following occurred, in substance and in part:

    a. An FS-LEI officer advised SMART and Individual-1 that the possession of marijuana was illegal on National Forest Service ("NFS") lands.

    b. The FS-LEI officer then advised both SMART and Individual-1 that he was going to conduct a probable cause search of the Vehicle. SMART and Individual-1 were asked to exit the Vehicle.

    c. After both SMART and Individual-1 exited the Vehicle, the FS-LEI officer placed them towards the front of the Vehicle. The FS-LEI officer immediately noticed a loaded firearm magazine (the "Loaded Firearm Magazine") in the change tray near the center console of the Vehicle, which would have been right next to SMART's left knee as a passenger in the Vehicle.

    d. Next to the Loaded Firearm Magazine, the FS-LEI officer noticed a straw that appeared to have white powdery substance in it. The officer asked what the substance is, and Individual-1 indicated that the substance is fentanyl.

    e. Also next to the Loaded Firearm Magazine and the fentanyl straw were what appeared to be two marijuana cigarettes that had been recently smoked.

    f. The FS-LEI officer then asked if there was other fentanyl in the Vehicle, and Individual-1 stated that there was, in the back seat. The FS-LEI officer located two black bags in the back seat. The FS-LEI officer picked up one of the black bags and asked both parties whose bag it was. SMART stated, "mine." The FS-LEI officer then

     asked SMART what was in the bag, and SMART replied that the fentanyl was in the identified bag ("SMART's Bag").

    g. The FS-LEI officer searched SMART's Bag and located an orange Walgreen's prescription pill bottle, containing a tan powdery substance. The FS-LEI officer also located marijuana and paraphernalia in the bag that SMART claimed to be his.

    h. Next, the FS-LEI officer observed that SMART began pacing in the roadway and was failing to comply with officers' commands to stay in front of the Vehicle. With concern that SMART may attempt to flee, FS-LEI officers placed SMART in handcuffs. SMART was then placed in the back of a patrol vehicle, while officers continued to search the Vehicle.

    i. During the continued search of the Vehicle by FS-LEI personnel, a firearm (a Sig Sauer P938 9mm caliber pistol S/N 52E059799) (the "Sig Sauer") was located in the trunk of the Vehicle in a holster. Located in the firearm was a loaded Sig Sauer P938 magazine containing F.C. Luger 9mm ammunition. There was also a round in the chamber of the Sig Sauer.

    j. Individual-1 told FS-LEI officers that the firearm was his.

11. SMART's Bag was searched, and revealed the following:

    a. Controlled substances, including: approximately seven grams of apparent marijuana, two marijuana cigarettes, and one black pipe containing what appeared to be marijuana residue.

    b. The tan powdery substance inside the orange Walgreen's prescription pill bottle, as described above, presumptively tested positive for fentanyl. The total weight of the pill bottle and its contents was 20 grams.

    c. A clear plastic bag containing unused empty pill capsules, which was labeled as containing 500 capsules. The bag appeared was approximately half full. Therefore, it is probable that there were approximately two hundred and fifty unused pill capsules remaining in the clear plastic bag.

12. Based on my training and experience, I believe that the contents of SMART's Bag reveal that SMART intended to distribute the fentanyl in his possession. I believe this because the quantity of fentanyl—approximately 20 grams—far exceeds personal use quantities. I also believe this because SMART also had empty pill capsules, which I know can be filled with controlled substances for distribution.

13. After the events described above, SMART was transported to the Moffat County Sheriff's Office. During this transportation, SMART told officers, in substance and in part, that he had just been released from custody in Oklahoma approximately a year ago.

14. Once SMART arrived at the sheriff's office, he was read his rights pursuant to *Miranda*, and told officers the following, in substance and in part:

    a. SMART and Individual-1 work together in Oklahoma.

    b. SMART and Individual-1 go shooting together in Oklahoma. SMART claimed that the gun in the Vehicle must have come from Oklahoma, but that he had not seen it. He disclaimed knowledge of the gun and claimed he did not touch it.

    c. SMART disclaimed knowledge of the Loaded Handgun Magazine in the Vehicle.

    d. SMART said his home in Oklahoma was broken into recently and the intruders demanded to know where the weapons were. During the break-in, the robber poured lighter fluid on Individual-1.

    e. SMART said the fentanyl was in a red bag that must have belonged to a woman he and Individual-1 met the prior evening. The woman was approximately 45 years old with neon green hair.

15. Based on my training and experience, I believe that SMART and Individual-1 possessed the Sig Sauer in the trunk of the Vehicle to protect the drugs that they intended to sell at the Rainbow Gathering.

16. I have reviewed SMART's criminal history and learned that SMART has criminal history records in Oklahoma, Colorado, and Oregon. Among other felony convictions, I am aware that SMART was convicted in District Court in Cleveland County, Oklahoma, of second degree robbery, a felony punishable by more than one year imprisonment, on June 14, 2019. For this offense, SMART was sentenced to five years' imprisonment, and ultimately served an incarceratory sentence from June 25, 2019 to June 30, 2021.

17. Based on my training and experience, I am aware that Sig Sauer firearms—that is, firearms such as the firearm located in the trunk of the Vehicle—are not manufactured in Colorado and therefore must have traveled in interstate commerce to be present in Colorado on July 2, 2022. Based on open-source research, I have learned that Federal Cartridge Luger 9mm ammunition (F.C. Luger 9mm ammunition)—that is, the ammunition in the Loaded Firearm Magazine and in the magazine in the trunk of the Vehicle—is not manufactured in Colorado and therefore must have traveled in interstate commerce to be present in Colorado on July 2, 2022.

18. The Loaded Firearm Magazine is of the type and caliber that is accepted by the Sig Sauer that was located in the trunk.

*s/ John Dalen Bunch*
Special Agent John Dalen Bunch
United States Forest Service
Law Enforcement and Investigations

Sworn to before me by reliable electronic means this ___3rd___ day of July, 2022

_____
Hon. Kristen L. Mix
United States Magistrate Judge
District of Colorado


Affidavit reviewed and submitted by Andrea Surratt, Assistant United States Attorney.